IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CR. NO.  5:24-CR-00810-1 |
| | § | |
| MINSU FANG | § | |

## DEFENDANT'S MOTION TO DEPOSE WITNESS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 15(A)

TO THE HONORABLE KEITH P. ELLISON, UNITED STATES DISTRICT JUDGE FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION:

The defendant, MINSU FANG, through his attorneys, Kent A. Schaffer and James M. Kennedy, hereby files this motion to depose witness pursuant to Federal Rules of Criminal Procedure, Rule 15(a).

### I. Background

In counts 1 through 3 of the superseding indictment, Mr. Minsu Fang ("Mr. Fang") is charged with Conspiracy to Manufacture and Distribute Fentanyl, Conspiracy to Manufacture and Distribute a Listed Chemical for Purpose of Unlawful Importation, and Conspiracy to Export a Listed Chemical. The alleged scheme involves several co-conspirators mainly operating in China, with contacts in the United States of America and Mexico. The information used to support this motion comes from the government's superseding indictment and criminal complaint.

1

### a. Evidence from Government's Superseding Indictment

In its superseding indictment, the government alleges Mr. Fang and his co-conspirators operated as suppliers for precursor chemicals used in the manufacture of fentanyl. The government alleges Mr. Fang and his co-conspirators shipped these precursor chemicals from China to the United States to Mexico. The indictment alleges the scheme operated as follows:

- In China, Mr. Fang and his co-conspirators would apply commercial shipping labels to each parcel containing precursor chemicals.

- These shipping labels directed that, once successfully entered into the United States, the parcels should be shipped to various locations along the United States/Mexico border.

- Mr. Fang and his co-conspirators would declare the parcels containing the precursor chemicals to have *de minimis* value (less than $800) to avoid an individual search upon entering the United States.

- Mr. Fang and his co-conspirators would commingle the parcels containing the precursor chemicals with similarly low value import parcels, so that each of the shipments would be admitted into the United States without a detailed inspection of the individual contents.

2

- Mr. Fang and his co-conspirators would then use re-shippers in the United States to facilitate further transport or shipment of those parcels from the United States to Mexico.

### b. *Evidence from Government's Complaint*

In its criminal complaint, the government alleges Mr. Fang knew of the contents of the packages that he was shipping. The government used a DEA Confidential Source ("CS") as part of its investigation. In relevant part, the government alleges Mr. Fang knew of the contents of the packages based on various communications between Mr. Fang and CS. The communications between CS and Mr. Fang are alleged as follows:

- On September 8, 2023, CS informed Mr. Fang that the contents of an opened box were not "cosmetics" because CS recognized the contents from previously working with "it."

- On September 9, 2023, CS discussed an interest to purchase fentanyl precursors from Mr. Fang. During the conversation, CS stated that CS used to transport the same "product" and CS knows that these products are used to make "fenta." Mr. Fang replied: "You know very well."

- On September 11, 2023, CS communicated with Mr. Fang through WhatsApp. During the communications, Mr. Fang advised CS that the manufacturer would be willing to sell the product using chemical

3

companies to acquire the precursors. Mr. Fang then agreed to both ship and sell the precursors for a fee.

- On September 21, 2023, CS texted Mr. Fang that CS would be using the powder to make fentanyl. CS advised Mr. Fang that he wanted to continue doing business with him.

### c. *Independent Investigation*

Through independent investigations, done by undersigned counsel, the defense interviewed key witness Xincheng Wu ("Mr. Wu"). Mr. Wu was interviewed and is able and willing to provide testimony that is material to Mr. Fang's defense. However, Mr. Wu lives in China and is beyond the subpoena power of this court and is not willing to voluntarily come to the United States.

### 1. *Interview of Mr. Xincheng Wu*

The defense has learned, through independent investigations, Mr. Wu possesses knowledge that not only undermines the government's theory but also plays a key role in Mr. Fang's defense by giving exculpatory testimony. This information is material to Mr. Fang's defense.  Mr. Wu's testimony will show that during and before the course of the alleged criminal scheme, Mr. Wu personally met with Mr. Fang numerous times and formed a business relationship with him. Mr. Wu knows the freight business well and was aware of the inner workings of Mr. Fang's relationship with various co-conspirators. Mr. Wu has first-hand knowledge of this

4

specific industry and can provide explanations for why Mr. Fang's business operates as it does. Mr. Wu can further testify to how Mr. Fang got involved in this business arrangement and his role within the operation. Most importantly, Mr. Wu can testify to why Mr. Fang did not know of the contents of the packages he was shipping and can provide an explanation as to why. Affidavit of Mr. Wu is attached as *Exhibit "A."*

## II. Support for Rule 15(a) Depositions

Federal Rules of Criminal Procedure, Rule 15(a) allows a "party [to] move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice." The Fifth Circuit has found that there are two requirements for a deposition under Rule 15(a) to be appropriate: The deponent's testimony must be *material* and the deponent must be *unavailable* for trial. *United States v. Dillman*, 15 F.3d 384, 389 (5th Cir. 1994).

### a. *Materiality*

The testimony of the foreign witness, Mr. Wu, would be used to support Mr. Fang's theory of the case that he did not know the actual contents of the packages that he was shipping.

In his sworn affidavit, Mr. Wu states that Mr. Fang believed, at all times, that his conduct was not illegal or improper, and that the goods he was attempting to

move were legal substances. Accordingly, Mr. Wu explained that representations were made both to himself and Mr. Fang, that the chemicals he was trying to cross into Mexico were to be used to make cosmetics and were not controlled substances.

Mr. Wu has been working with Mr. Fang for over a decade. Both individuals worked in the freight forwarding industry, where Mr. Fang had developed a proven business model for shipments from the United States to Mexico. Mr. Wu circulated Mr. Fang's capabilities to the Shenzhen freight market. A colleague in the industry, Liu Tao, contacted Mr. Wu regarding the clearance process for U.S. – Mexico shipments, and whether chemical products could be shipped. Mr. Wu then connected Liu Tao to Mr. Fang. Mr. Fang informed Liu Tao that he could ship regular chemical products. After multiple discussions, Mr. Wu, Mr. Fang, and Liu Tao entered into a business arrangement wherein:

- Mr. Fang and Mr. Wu would provide freight forwarding services from the U.S. to Mexico.

- With the condition that customers had to deliver goods to the designated U.S. warehouse.

- The price was USD $5.3/kg (converted into RMB).

- Compensation was "refund plus equal compensation."

In August 2023, after a year of occasional shipments, goods were shipped to the U.S. at an increasing volume. For unknown reasons, however, the goods

6

remained in the warehouse and were not forwarded to Mexico. Mr. Fang then contacted Mr. Wu asking whether the goods handled by Liu Tao were in fact what they purported to be. Mr. Fang also inquired about the declared value per kilogram and whether Mr. Wu could contact the owner of the goods. Mr. Wu informed Mr. Fang that he had never seen the goods himself and did not know the exact name of the chemical. Mr. Wu also refused Mr. Fang's request to contact the owner of the goods, as Mr. Wu claims it is inappropriate to question the client directly in their industry.

A month later, Mr. Fang had informed Mr. Wu that the goods were detained by U.S. Customs. Liu Tao then approached Mr. Wu, insisting that the goods had been misappropriated by the agents. Mr. Wu emphasizes that, at all times, Liu Tao had represented to Mr. Fang that the goods were not controlled substances and merely used to make cosmetics. Accordingly, due to the chain of communication in the industry, Mr. Fang had no reason to suspect otherwise.

In sum, Mr. Wu will provide detailed information regarding Mr. Fang's dealings with Liu Tao during the time Mr. Fang was attempting to cross Liu Tao's customer's items into Mexico. As an integral member of this business arrangement, Mr. Wu's testimony offers information that is material, relevant, and necessary to Mr. Fang's theory that he did not know of the contents of the packages.

### b. *Unavailability*

The witness, Mr. Wu, lives in and is a citizen of China. Mr. Wu has agreed to be deposed in Shenzhen, China. Undersigned counsel has inquired with the witness whether he would be willing to voluntarily travel to the United States to testify at Mr. Fang's trial. Mr. Wu has stated that he will not travel to the United States to testify at Mr. Fang's trial although he is willing to give testimony in a deposition.

This Court cannot force a foreign national, living outside of the Court's subpoena power, to testify at trial. *See Dillman* at 389. ("We have held, however, that circumstances such as those confronting us in this case–[the foreign witness] is an unservable deponent who is unlikely to return to the United States–can be extraordinary.") (citing *United States v. Farfan-Carreon*, 935 F.2d 678, 680 (5th Cir. 1991).

In order for the defendant to introduce any of the depositions at trial, a defendant will have to show that the particular witness is unavailable. Fed. R. Evid. 804(b)(1). Unless an agreement is reached with the government in advance, the defense will follow all steps available under the law to attempt to have all four witnesses appear at trial to testify. If after those efforts, the witnesses still do not appear to testify, the defendant will at least have the ability to introduce the deposition testimony in to evidence at trial.

8

### III. Other Concerns

Mr. Fang waives his right to be present at the deposition and waives any right under the Sixth Amendment of the Constitution to have face-to-face confrontation of Mr. Wu.

Mr. Fang does not waive his rights to allow their attorneys to be physically present at the depositions.

### IV. Conclusion

The anticipated testimony meets the requirements provided to us from Dillman for a 15(a) motion to be granted. The witness is unavailable and the testimony being offered is material. Further the testimony is in the interest of justice as it exculpates Mr. Fang from the above charges. For the above-mentioned reasons, we respectfully ask this court to grant this motion.

Respectfully submitted,

*/s/ Kent A. Schaffer*
KENT A. SCHAFFER
Federal ID No. 3603
TBA No. 17724300
JAMES M. KENNEDY
Federal ID No. 30414
TBA No. 24008754
1001 McKinney Street, Suite 1600
Houston, Texas 77002
Telephone:  (713) 228-8500
Facsimile:  (713) 228-0034

Counsel for Defendant,
MINSU FANG

9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CR. NO.  5:24-CR-00810-1 |
| | § | |
| MINSU FANG | § | |

## CERTIFICATE OF CONFERENCE

Counsel for defendant conferred with AUSA Heather Winter regarding this motion.  AUSA stated the government is opposed to this motion at this time.

/s/ Kent A. Schaffer
KENT A. SCHAFFER

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to AUSA Heather Winter (heather.winter@usdoj.gov).

/s/ Kent A. Schaffer
KENT A. SCHAFFER