UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | CRIMINAL NO. 5:24-810S |
| | § | |
| MINSU FANG a/k/a FERNANDO, | § | |
| Defendant. | § | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DEPOSE WITNESS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 15(a)**

The United States of America, by and through John G.E. Marck, Acting United States Attorney and Richard Hanes and Heather Winter, Assistant United States Attorneys for the Southern District of Texas, files its Response in Opposition to Defendant Minsu Fang's Motion to Depose Witness Pursuant to Federal Rule of Criminal Procedure 15(a) (Dkt. #56).

Defendant moves to allow a witness, Wu Xincheng ("Wu"), to be deposed remotely from China in order to use his testimony at trial. The Government opposes the request because deposing witnesses physically located outside of the United States, particularly in China, raises significant concerns. First, there is a specific legal process that must be followed when the defense (or the United States) seeks to obtain evidence or testimony from witnesses physically located in China. Defendant has failed to show why that process could not, or should not, be followed here. Second, Federal Rule of Criminal Procedure ("FRCP") 15 provides a mechanism to depose witnesses in "exceptional" circumstances and in the "interest of justice". The Defendant has not shown that such circumstances exist here. Third, Defendant has not presented facts to establish that the proposed witness's testimony would be sufficiently reliable or satisfy Federal Rule of Evidence ("FRE") 603 if given by video from China.

Defendant is charged in three counts of the Superseding Indictment: (1) Conspiracy to

1

manufacture and distribute a controlled substance, namely fentanyl, in violation of Title 21, United States Code, §§ 841(a)(1) and 846; (2) Conspiracy to distribute a listed chemical to wit: 1-Boc-4P, intending, knowing and having reasonable cause to believe that such chemical would be unlawfully imported into the United States, in violation of Title 21, United States Code, §§ 959(a), 960(d)(1) and 963; and (3) Conspiracy to export a listed chemical: to wit, 1-Boc-4P, from the United States to Mexico, knowing and having reasonable cause to believe, that the chemical would be used to manufacture a controlled substance in violation of the laws of the country to which the chemical is exported, in violation of Title 21, United States Code, §§ 960(d)(4) and 963.

Specifically, it is alleged that Fang knowingly facilitated the shipments of fentanyl precursor chemicals through the United States into Mexico. The Defendant acted in conjunction with Wu Xincheng ("Wu") to facilitate these shipments and ensure their delivery into Mexico, having knowledge that the "cosmetics" they were shipping were in fact fentanyl precursors. Now that Fang is facing federal charges, Wu seeks to provide testimony about Fang's knowledge of the contents of these packages from afar. Besides bypassing the procedural steps necessary to obtain a deposition of a Chinese witness, the testimony Wu seeks to provide as set out in his affidavit is unreliable, immaterial and based on hearsay that would ultimately be inadmissible at trial. The foreign deposition would likewise cause a significant amount of delay and waste of resources. Additionally, the best evidence of the communications between Wu and Fang is well documented during the relevant time period in extensive WeChat conversations that have been translated and produced in this case. Finally, Wu's deposition testimony raises real reliability concerns as Wu would not be subject to an oath or penalty of perjury.

**ARGUMENT**

**1.    The proper mechanism for a Defendant to obtain testimony from witnesses located in foreign jurisdictions is a letter rogatory through the State Department.**

If the defendant establishes that a motion for Rule 15 exhibits "exceptional circumstances" and is "in the interest of justice", then any proposed deposition must still follow the procedural requirements.  It is not clear that the Court's subpoena power or authority to give oaths extends to witnesses outside of the United States.  *See* 28 U.S.C. §§ 459, 953.  As such, there is a specific legal process that must be followed when a criminal defendant requests testimony from witnesses overseas and from China in particular.  Permission to take such testimony should be obtained by sending a "letter rogatory" to the host country.  *See* Dep't of State, China Judiciary Assistance Information, *available at* https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html ("[C]riminal defendants or their defense counsel seeking judicial assistance in obtaining evidence or in effecting service of documents abroad in connection with criminal matters may do so via the letters rogatory process.").

Acting outside the letter rogatory process could be perceived as impeding on China's sovereignty.  *Commodity Futures Trading Com'n v. Nahas*, 738 F.2d 487, 494 (D.C. Cir. 1984) (noting that failure to follow the letter rogatory process was viewed by Brazil as an "intrusion on" its sovereignty).  "Letters rogatory are requests from courts in one country to the courts of another country requesting the performance of an act which, if done without the sanction of the foreign court, could constitute a violation of that country's sovereignty."  U.S. Department of State, "Preparation of Letters Rogatory," https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/obtaining-evidence/Preparation-Letters-Rogatory.html; *see also* 28 U.S.C. § 1781 (authorizing the State Department to send and receive letters rogatory).  Letters rogatory are issued by the Court to a defendant and sent through the State Department to

the host country.  *United States v. Al Fawwaz*, 2014 WL 627083, at *2 (S.D.N.Y. Feb. 18, 2014) (explaining district courts have "inherent authority to issue letters rogatory").  Defendant does not appear to have attempted to secure the witness's testimony through the letter rogatory process, nor has he provided any reason why he cannot do so.

Although in the civil context, a recent federal case permitting video testimony from China demonstrates the potential pitfalls of failing to seek proper authorization for witness testimony. *See Junjiang Ji v. Jling Inc.*, 2019 WL 1441130, at *11 (E.D.N.Y. Mar. 31, 2019), *appeal dismissed sub nom. Ji v. Jling Inc.*, 799 F. App'x 88 (2d Cir. 2020).  The court concluded: "by testifying via video link while located in mainland China, Ji violated Article 277 of the Chinese Civil Law. By participating in those proceedings, Defendants' counsel and potentially all other parties involved violated Article 15 of the Regulations and, thus, could be  fined under Article 30. Further, these violations potentially subjected the participating parties to deportation from China under Article 81 of the Administration Law as well as criminal liability under Article 13 of the Chinese Criminal Law." *Id*.; *see also* Fang Shen, "Are You Prepared For This  Legal Maze?" 72 UMKC L. Rev. 215, 230-31 (2003) ("China applies strict rules to  administering oaths . . . and U.S. litigants should not proceed without first obtaining permission from Chinese authorities and should not be optimistic [about] being granted permission."); Dep't of State, China Judiciary Assistance Information, *available at* https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html (noting in the civil context that even taking voluntary depositions of willing witnesses "could result in the arrest, detention or deportation of the American attorneys and other participants").

For the reasons set forth above, the letter rogatory process is the proper mechanism for Defendant to secure witness testimony from abroad.  Because Defendant has not presented any

basis for why that process should not be followed here, the Court should deny Defendant's motion.

**2. A Rule 15(a) Motion for Deposition Requires a Showing of Exceptional Circumstances in the Interest of Justice.**

Federal Rule of Criminal Procedure 15 provides the mechanism and standard by which depositions are allowed in criminal proceedings. Generally, FRCP 26 requires that "[i]n every trial the testimony of witnesses must be taken in open court, unless otherwise provided by a statute or by rules adopted under 28 U.S.C. §§ 2072-2077." There are no rules or statutes that authorize courts or parties to call witnesses who are located outside the jurisdiction of the United States for live video testimony in criminal cases. *See United States v. Yates*, 438 F.3d 1307, 1314 (11th Cir. 2006) (en banc) (explaining that no such process is authorized by law and that proposed amendments to Rule 26 were rejected).

Rather, in general, "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice." FRCP 15(a). "The word 'may' signifies the district court retains broad discretion in granting a Rule 15(a) motion and that the court should review these motions on a case-by-case basis, examining whether the particular characteristics of each case constitutes 'exceptional circumstances.'"[1] *United States v. Dillman*, 15 F.3d 384, 389 (5th Cir. 1994). The words "exceptional circumstances" dictate that "only in extraordinary cases will depositions be compelled." *Id.* "The burden of proof in a Rule 15(a) motion [rests] with the movant to demonstrate the necessity of preserving prospective witness' testimony by a deposition." *United*

---

[1] In 1975, Rule 15 was amended to require "exceptional circumstances" instead of the previous three independent requirements of witness unavailability, materiality of testimony, and necessity to prevent a failure of justice. *See United States v. Jefferson*, 594 F. Supp. 2d 655, 663-64 (E.D. Va. 2009).

*States v. Olafson*, 213 F.3d 435, 437 (9th Cir. 2000); *United States v. Ismaili*, 828 F.2d 153, 159 (3d Cir. 1987).

While the text of FRCP 15(a) does not expressly require materiality, the Fifth Circuit has determined that the words "in the interest of justice" makes it "emphatically clear" that a deposition only be used to offer material evidence. *Dillman*, 15 F.3d at 389 (citing *United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir. 1993)). For a defense witness's testimony to be material in the context of Rule 15, the testimony must be more than merely relevant. Courts have tended to use the materiality standard from *Brady v. Maryland*, 373 U.S. 83 (1963), which provides that testimony must be exculpatory and not corroborative or cumulative of other evidence. *See United States v. Gragg*, 145 F.3d 1334 (6th Cir. 1998) (finding no error in district court's denial of Rule 15 deposition when testimony would have been cumulative at trial). *See also Drougal*, 1 F.3d at 1556 (evidence is not "material" for purposes of Rule 15 if it is not "highly relevant to a central issue in the case"); *United States v. Jefferson*, 594 F. Supp. 2d 655, 667 (E.D. Va. 2009) ("In the Rule 15 context, materiality has the same meaning [as in *Brady*] and its progeny, namely, that the evidence or testimony must be exculpatory, and not corroborative or cumulative of other evidence."). *Dillman* at 389 (upholding district court's denial of Rule 15 deposition given the "limited scope and cumulative nature of the [deponent's] testimony"); *United States v. Bello*, 532 F.2d 422, 423 (5th Cir. 1976) (refusing to reverse on Rule 15 grounds when the weight of the evidence of guilt was such that potential testimony would not have had a "significant impact"); *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1570 (9th Cir. 1989) (refusing to reverse denial of Rule 15 motion due, in part, to cumulative nature of potential evidence)*, cert denied*, 497 U.S. 1003 (1990).

Courts must also "weigh the moving party's showing of materiality and unavailability against countervailing considerations . . . to ensure that . . . depositions [are approved] only in rare

6

instances . . . [as] Rule [15] clearly intended." *United States v. Hajbeh*, 284 F. Supp. 2d 380, 383-84 (E.D. Va. 2003); *see also Fuentes-Galindo*, 929 F.2d 1507, 1509 (10th Cir. 1991) (explaining that the phrase "exceptional circumstances" was intended "to ensure that the trial court exercised its discretion in determining whether a deposition should be taken under the particular circumstances presented"). Such considerations include "the likelihood that the testimony will be admissible at trial and whether a deposition would cause excessive delay." *Hajbeh*, 284 F. Supp. 2d at 383; *see also United States v. Ordonez*, 242 F. Supp. 3d 466, 473 (E.D. Va. 2017) ("Of course, to be material, testimony must be admissible."); *United States v. Jinian*, 2010 WL 3910138, at *4 (N.D. Cal. Oct. 5, 2010) ("[A]dmissibility is a factor that courts consider in determining whether to allow a Rule 15 deposition."). While Rule 15 distinguishes between preserving testimony and admitting it at trial, *see* FED. R. CRIM. P. 15(f), "[courts] need not, at the cost of time and money, engage in an act of futility by authorizing depositions that clearly will be inadmissible at trial." *Drogoul*, 1 F.3d at 1555; *see also United States v. Alexander*, 782 F.3d 1251, 1257 (11th Cir. 2015) (concluding that district court did not abuse its discretion by refusing to allow defendant to depose witness outside the United States, where proposed testimony would have constituted inadmissible hearsay); *United States v. Warren*, 713 F. Supp. 2d 1, 5 (D.D.C. 2010) ("The Court need not allow depositions in order to preserve testimony where the question of admissibility is not a close one and the evidence at issue is unsupported conjecture that does not exculpate defendant.").

Here, the proposed testimony offered by Wu does not provide admissible or material evidence relevant to the issues in this case and is otherwise cumulative. In his affidavit, Wu references another individual by the name of "Liu, Tao" ("Liu") who began working with Wu and Fang in September 2022 to ship chemical products to Mexico. Dkt. #56, Affidavit, p. 2. Wu

reached terms of agreement with Fang for shipments through the U.S. to Mexico, at which point Liu began working through Wu to use Fang's shipping routes to Mexico. "Each time, [Liu] gave [Wu] the tracking number and a Mexico address, which [Wu] forwarded to Mr. Fang." *Id.* In August 2023, one of Liu's shipments was not forwarded to Mexico. "Liu, Tao asked [Wu] about it, and [Wu], in turn, asked Mr. Fang." Fang spoke directly with Wu about Liu's shipments and inquired if the items declared in the manifests were in fact the items contained in the shipments. Wu refused to ask Liu about the contents of the shipments, claiming "it is inappropriate for us to question the client directly." *Id.* Wu then recalled on September 26, 2023, Fang informed him a shipment had been detained by U.S. Customs. Liu was upset and came to Wu's company to find out the reason. "[Wu] called Mr. Fang in [Liu's] presence. Later, Mr. Fang confirmed the goods had indeed been seized…" *Id.* at 3.

Based upon this proposed testimony of Wu as set out in his affidavit, it is clear that any evidence offered by Wu would be based on hearsay and would be inadmissible at trial. Specifically, it was Wu, not Fang, who dealt with Liu (the alleged seller of the fentanyl precursors). Even on the one occasion where it appears Fang may have talked directly to Liu during a phone call, the statement made by Wu is that he called Mr. Fang and only later did Fang confirm the goods had been seized. The tenor of Wu's testimony (which still constitutes a hearsay conversation) indicates that Fang did not even participate in the call with Liu. Wu's relationship and communications with Liu have no bearing or relevance regarding Fang's knowledge in this case, and therefore, are not material.

In his affidavit, Wu then conclusory offers the following: "I know from my first involvement in this matter that Mr. Fang believed, at all times, that his conduct was not illegal or improper, and that the goods he was attempting to move were legal substances . . . We believed

this to be true based on the representations that were made by Liu, Tao, specifically that the chemicals he was trying to cross into Mexico were to be used to make cosmetics and were not controlled substances. I had no reason to know that the goods shipped were illegal in any way and to my knowledge, neither did Mr. Fang." *Id.* These statements offered by Wu are speculative and contain hearsay. Wu purports to know what Fang believed at all times—this is speculation. Wu cannot claim to know what Fang knew at all times. Wu also claims to know what representations, if any, were made to Fang by Liu—this is hearsay and contrary to his own statement. Wu averred that he did not ask Liu what was in the shipment because it was "inappropriate" to do so. Wu cannot claim to know what Fang knew when Wu himself refused to ask Liu what was contained in the shipments. Wu's understanding of what was in the shipments is irrelevant and assumes Fang's understanding and knowledge is the same.

Additional evidence also calls into serious question the truthfulness of Wu's testimony that Fang did not know what was contained in the shipments. Wu's broad statements of his omniscient understanding of Fang's full knowledge in this case ignores other significant evidence of information Fang received, informing him that the shipments contained fentanyl precursors. Further, evidence about which Wu seeks to testify is already contained in lengthy WeChat messaging between Wu and Fang during this time, making Wu's proposed testimony cumulative and corroborative. Specifically, throughout the relevant time period, Wu and Fang often referred to the chemicals as "sensitive goods", discussing how Mexican military and police had a full presence along the Mexican border and were detaining goods. Further, in August 2023, Fang informed Wu that a package had been seized and the "DEA is investigating." After realizing that shipments were being seized by U.S. Customs and investigated by DEA, Wu and Fang worked to find other couriers and warehouses that would accept the powders and liquids. Thereafter, on

9

September 20, 2023, Fang informed Wu that the powders and chemicals were used "to manufacture prohibited substances", "like fentanyl and such."  Fang and Wu continued to work vigorously to get the powders and liquids delivered to Mexico, as all documented in their daily and frequent communications, spanning 2020 to 2024. The defense suggests that Wu "will undermine the government's theory [and] also play a key role in Mr. Fang's defense by giving exculpatory testimony" (Dkt. #56, p. 4), but Fang's own communications during the course of the conspiracy, as well information he received from others, refute Wu's testimony.  The WeChats between Wu and Fang alone call into question the reliability and value of Wu's testimony.

**3.      Defendant Has Not Presented Facts to Establish that the Witness's Testimony Would Be Reliable and Satisfy FRE 603.**

In addition to admissibility, courts should also consider the reliability and trustworthiness of the proposed deposition, particularly as it relates to the taking of the oath and the penalty for false testimony. Defendant has not pointed to sufficient indicia of reliability with the proposed video testimony from overseas, and specifically, that such testimony would satisfy FRE 603 or otherwise be admissible.  FRE 603 requires that "[b]efore testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so."

The witness oath is meaningful because it is backed by the possibility of perjury.  As the Supreme Court has explained, the oath serves as a "warning" that a witness "may be subject to a prosecution for perjury."  *United States v. Mandujano*, 425 U.S. 564, 582 (1976) (Burger, J. plurality op.).  The oath is meant to both impress upon the witness "the seriousness of the matter" and "guard[] against the lie by the possibility of a penalty for perjury."  *Maryland v. Craig*, 497 U.S. 836, 845–46 (1990).  The oath is "the strongest indicator of the reliability of a witness'

10

testimony." *See United States v. Banki*, 2010 WL 1063453, at *2 (S.D.N.Y. Mar. 23, 2010) (denying motion for remote testimony). Taking the oath in open court before a federal judge and jury emphasizes the gravity of the witness's testimony and, importantly, the consequences for lying under oath. Moreover, opposing counsel is best positioned to challenge the witness's credibility through face-to-face cross examination, and the jury is best able to assess the truthfulness and reliability of the witness's testimony in open court. *See Drogoul*, 1 F.3d at 1552 (noting that the jury's ability to observe the demeanor of deposition witnesses is limited). For these reasons, "depositions generally are disfavored in criminal cases." *Id.* at 1551.

Defendant further fails to acknowledge that it is harder to impose a penalty of perjury on a witness outside the jurisdiction of the United States.[2] *Id.* ("[B]ecause of the absence of procedural protections afforded parties in the United States, foreign depositions are suspect and, consequently, not favored."); *United States v. Alvarez*, 837 F.2d 1024, 1029 (11th Cir. 1988) ("Foreign deposition testimony, because of the absence of a sanction for perjury, is suspect."); *United States v. Buck*, 271 F. Supp. 3d 619, 624 (S.D.N.Y. 2017) (denying defendant's motion to allow remote testimony, in part, because the witnesses resided in Switzerland and were "immune from perjury charges"); *United States v. Moalin*, 2012 WL 3637370, at *6 (S.D. Cal. Aug. 22, 2012) (concluding that defendant failed to show that "an oath in Somalia is subject to penalties of perjury and judicial process like those available in the United States" and that "this factor of reliability and trustworthiness of the proposed depositions strongly disfavors Rule 15 depositions in Somalia"); *Banki*, 2010 WL 1063453, at *2 ("Without the teeth of the penalty of perjury, the oath becomes

---

[2] Notably, China does not have an extradition treaty with the United States. *See* 18 U.S.C. § 3181 (2019) (listing bilateral extradition treaties).

nothing more than an empty recital"). The substantial concern about Wu's reliability and truthfulness remains. Accordingly, Defendant's motion also fails because he has not presented any specific facts to establish the reliability of the witness's testimony given by video deposition in China.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that Defendant's Motion to Depose Witness Pursuant to Federal Rule of Criminal Procedure 15(a) (Dkt. #56) be denied.

Respectfully submitted,

JOHN G.E. MARCK
ACTING UNITED STATES ATTORNEY

By:   */s/  Heather Winter*
HEATHER WINTER
Assistant United States Attorney
U.S. Attorney's Office
1000 Louisiana, Ste. 2300
Houston, Texas 77002
(713) 567-9000

By:   */s/  Richard Hanes*
RICHARD HANES
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2026, I electronically filed the foregoing document with the clerk for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorney of record.

/s/ Heather Winter
HEATHER WINTER
Assistant United States Attorney